# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

FARD RAHMAN GRAHAM,

      Petitioner,

v.                                   Case No. 08-11117

NICK LUDWICK,

      Respondent.

_____/

## OPINION AND ORDER (1) DENYING THE HABEAS CORPUS PETITION; (2) DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY; AND (3) DENYING PETITIONER'S REQUEST FOR A STAY

Petitioner Fard Rahman Graham has filed a *pro se* habeas corpus petition under 28 U.S.C. § 2254. The habeas petition challenges Petitioner's convictions for two counts of armed robbery and two counts of bank robbery. Petitioner recently filed a request for permission to stay this action so that he can return to state court and exhaust state remedies for a new claim that challenges the trial court's jurisdiction. Because Petitioner's challenge to the trial court's jurisdiction is not a basis for habeas relief and because his other claims lack merit, the petition and request for a stay will be denied.

## I. BACKGROUND

Petitioner initially was charged in Oakland County, Michigan with two counts of armed robbery. The charges arose from two bank robberies committed in Birmingham, Michigan on successive days in December of 2004. Petitioner was bound over to circuit court on the armed robbery charges, but the prosecutor indicated at the preliminary examination that he might amend the criminal information to add two charges of bank robbery.

On or about March 16, 2005, the prosecutor moved to add two counts of bank robbery to the criminal information. The trial court held a hearing on the prosecutor's motion and granted it over defense counsel's objection. The trial commenced about a month later. The Michigan Court of Appeals summarized the trial testimony as follows:

> Defendant's convictions arise from robberies at two banks in the city of Birmingham. The first robbery occurred on a rainy morning on December 7, 2004, at a Charter One Bank where Bradley Grekonich worked as a teller. According to Grekonich, a man wearing a black puffy coat and a baseball hat walked up to the counter and handed him a deposit slip that stated, "I have a gun. Give me the money or I'll kill you." Grekonich gave the man $1,700. The man walked out of the bank, leaving the deposit slip behind at the counter. Grekonich identified a man depicted in still photographs produced from the bank's video surveillance system as the robber, but failed to identify defendant in a pretrial lineup conducted by the police.
>
> The second robbery occurred on the morning of December 8, 2004, at a Fidelity Bank where Shareen Coles worked as a teller. Coles identified defendant as the robber at trial and in a pretrial lineup. Coles testified that defendant wore a black puffy coat and a baseball cap when he entered the bank. He wrote something on a withdrawal slip and then approached the teller station next to Coles. Because that teller was busy, Coles offered to help defendant. Defendant gave Coles the withdrawal slip, which stated, "I have a gun. Give me all the money now." Coles handed cash from her drawer to defendant. She reported the robbery to bank managers after defendant departed toward a back exit. The withdrawal slip used to commit the robbery was left at the bank.
>
> The person whom Coles identified as the robber drove off in a red Chrysler Sebring. A bank customer followed the vehicle to Webster Street and then showed Birmingham Police Officer Matthew Baldwin the driveway where the vehicle pulled in. After Officer Baldwin determined that the vehicle was inside a detached garage at 1462 Webster Street, he and other police officers secured the area around the house. The police received information that defendant was a renter at the house. Officer Baldwin made phone contact with a female occupant to request that defendant come out. After approximately five hours, defendant exited the house. Police officers subsequently executed a search warrant of the house and garage. Parked inside the garage were a red Chrysler Sebring and a dusty black Mercury Topaz. Among the items in the Mercury Topaz were a wet, black puffy coat and baseball cap. A wet handwritten note in the coat pocket stated, "I have a gun. Give me the money or I will kill you."

*People v. Graham*, No. 263702, 2007 WL 861173 (Mich. Ct. App. Mar. 22, 2007).

Petitioner did not testify or present any evidence. His defense was that the prosecution failed to prove he was the robber.

On April 14, 2005, an Oakland County Circuit Court jury found Petitioner guilty, as charged, of two counts of armed robbery, Mich. Comp. Laws § 750.529, and two counts of bank robbery, Mich. Comp. Laws § 750.531. The trial court sentenced Petitioner as a habitual offender to four concurrent terms of twenty to fifty years. The Michigan Court of Appeals affirmed Petitioner's convictions in an unpublished opinion, *see Graham*, 2007 WL 861173 *1, and on July 30, 2007, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues. *See People v. Graham*, 735 N.W.2d 266 (Mich. 2007) (table).

Petitioner filed his habeas corpus petition on March 14, 2008. The grounds for relief are (1) unconstitutional search and seizure, (2) vindictive prosecution, (3) inadequate notice of the prosecution's expert witness, (4) denial of substitute counsel and conflict of interest, (5) double jeopardy and insufficient evidence, (6) prosecutorial misconduct and improper guilt instruction, and (7) inaccurate information at sentencing. Because Petitioner did not file a supporting brief, the court has looked to his briefs in the Michigan Court of Appeals for a fuller understanding of his claims.

Respondent asserts in an answer to the petition that Petitioner's claims are procedurally defaulted, not cognizable on habeas review, or without merit. "[I]n the habeas context, a procedural default, that is, a critical failure to comply with state procedural law, is not a jurisdictional matter." *Trest v. Cain*, 522 U.S. 87, 89 (1997). The court therefore will address the merits of any procedurally defaulted claims.

## II. STANDARD OF REVIEW

Section 2254(d) of Title 28, United States Code, imposes the following standard

of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).  Additionally, this Court must presume the correctness of a state court's factual determinations.  28 U.S.C. § 2254(e)(1).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application occurs" when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case."  *Id.* at 409.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Id.* at 411.

### III.  DISCUSSION

### A.  The Fourth Amendment Claim

Petitioner's first claim alleges that items seized from the gray Mercury Topaz parked in his garage should have been suppressed because that vehicle was not listed in the search warrant or in the affidavit supporting the warrant.  "[T]he Constitution does

4

not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial" if the State provided an opportunity for "full and fair litigation" of the Fourth Amendment claim. *Stone v. Powell*, 428 U.S. 465, 482 (1976). For a "full and fair" opportunity to have existed, the state must have provided a mechanism for raising the claim and presentation of the claim must not have been frustrated by a failure of that mechanism. *Gilbert v. Parke*, 763 F.2d 821, 823 (1985) (citing *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982)).

Petitioner filed a pretrial motion to suppress items found in the gray Mercury Topaz parked in his garage. On February 9, 2005, the trial court held a hearing on Petitioner's motion and determined that there was no justification for Petitioner's attack on the search warrant. The trial court denied Petitioner's motion, and the Michigan Court of Appeals thoroughly reviewed the issue during the appeal of right. The Court of Appeals determined that the police were authorized to search the vehicle in question. The Michigan Supreme Court also had an opportunity to review the issue.

Petitioner was given a full and fair opportunity to raise his Fourth Amendment claim at all levels of state court review, and presentation of the claim was not frustrated by a failure of the state mechanism. Therefore, his Fourth Amendment claim is not cognizable on habeas corpus review.

### B. Vindictive Prosecution

Petitioner alleges that the prosecutor amended the criminal information without adequate notice to him. He further alleges that the amendment punished him for exercising his right to a jury trial.

The Sixth Amendment to the United States Constitution affords a defendant in a

criminal prosecution the right to a jury trial and the right "to be informed of the nature and cause of the accusation." U.S. CONST. amend. VI. "[V]indictive prosecution violates due process." *Moran v. Burbine*, 475 U.S. 412, 466 (1986). "To punish a person because he has done what the law plainly allows him to do is a due process violation 'of the most basic sort.'" *United States v. Goodwin*, 457 U.S. 368, 372 (1982) (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978)). "For while an individual certainly may be penalized for violating the law, he just as certainly may not be punished for exercising a protected statutory or constitutional right." *Id.*

In *Bordenkircher v. Hayes*, the prosecutor threatened to charge the defendant as a habitual offender if the defendant refused to plead guilty to the original charge. The prosecutor carried out his threat when the defendant refused to plead guilty. A jury subsequently found the defendant guilty of the principal charge of uttering a forged instrument. The petitioner was sentenced as a habitual offender to life imprisonment. The Supreme Court held that the prosecutor's conduct, "which no more than openly presented the defendant with the unpleasant alternatives of forgoing trial or facing charges on which he was plainly subject to prosecution, did not violate the Due Process Clause of the Fourteenth Amendment." *Bordenkircher v. Hayes*, 434 U.S. at 365.

The prosecutor's conduct in this case was similar to the prosecutor's conduct in *Bordenkircher* only on the surface. At the preliminary examination on January 13, 2005, the prosecutor stated that he and defense counsel had discussed the possibility that the prosecutor would amend the criminal information to add bank robbery charges. There was, however, no indication of a prosecution offer to refrain from filing the additional charges if a guilty plea were accepted. Defense counsel acknowledged having discussed the matter with the prosecutor, stating that they could address any

6

amendment after the case reached the circuit court.  (Tr. Jan. 13, 2005, at 42-43.)

On March 16, 2005, the prosecutor moved to amend the criminal information to add two counts of bank robbery.  Defense counsel objected to the amendment at a hearing held on March 29, 2005, and Petitioner stated at the hearing that he had no intention of pleading guilty.  The trial court granted the prosecutor's motion, and Petitioner proceeded to trial two weeks later on two counts of bank robbery and two counts of armed robbery.  Following his conviction on all four counts, the Michigan Court of Appeals held that Petitioner did not establish plain error in connection with his claims of prosecutorial vindictiveness and lack of notice of the amended charges.

Petitioner was given three months' notice of the possibility that the prosecutor would amend the information, and the additional charges arose out of the same two incidents that led to the original charges.[1]  The court finds that Petitioner was provided sufficient notice of the amended information.

Petitioner's vindictiveness claim has no merit in light of *Bordenkircher*.  As in that case, the additional charges were fully justified by the evidence, and the petitioner was alerted to the possibility of being charged with another offense during plea negotiations.  He was free to accept or reject the prosecutor's plea offer.  Therefore, Petitioner's right to due process of law was not violated by the prosecutor's amendment of the criminal

---

[1] In addition, the new charges were no more serious than the existing charges.  *See* MCL 750.531 ("Any person who . . . shall put in fear any person for the purpose of stealing from any . . . bank, shall, whether he succeeds or fails in the perpetration of such larceny or felony, be guilty of a felony, *punishable by imprisonment in the state prison for life or any term of years.*")(emphasis added) and MCL 750.529. ("A person who engages in [robbery] and who in the course of engaging in that conduct, possesses a dangerous weapon or an article used or fashioned in a manner to lead any person present to reasonably believe the article is a dangerous weapon, or who represents orally or otherwise that he or she is in possession of a dangerous weapon, is guilty of a felony *punishable by imprisonment for life or for any term of years.*") (emphasis added).

information.  Petitioner has failed to show that the prosecutor was objectively vindictive.

### C.  Notice of the Prosecution's Expert Witness

Petitioner alleges next that the prosecutor provided inadequate notice of his intent to produce an expert witness.  In the alternative, Petitioner alleges that his trial attorney was ineffective for failing to seek an expert witness to rebut the testimony of the prosecution's expert witness.

"The right to a fair trial is a fundamental liberty secured by the Fourteenth Amendment."  *Estelle v. Williams*, 425 U.S. 501, 503 (1976) (citing *Drope v. Missouri*, 420 U.S. 162, 172 (1975)).  However, late endorsement of witnesses does not deprive a petitioner of due process or justify habeas corpus relief if defense counsel was able to conduct adequate cross-examination of the witnesses and had a meaningful opportunity to explain the evidence they offered.  *Mayes v. Gibson*, 210 F.3d 1284, 1292 (10th Cir. 2000).

Five days before trial in this case, the prosecution delivered its expert witness's opinion on certain writing samples to Petitioner's attorney.  The expert witness concluded that three of the bank notes threatening an armed robbery and a handwritten letter that Petitioner wrote to the trial court were all written by the same person.

At a hearing on the following day (April 7, 2005), Petitioner's attorney objected to the admission of the evidence at trial.  He claimed that there had been undue delay in producing the evidence.  The prosecutor responded that he and defense counsel had discussed the matter more than once and that, when Petitioner chose not to plead guilty, he had informed defense counsel he would probably engage the services of a handwriting expert.  The prosecutor went on to say that he had kept counsel informed,

that he had shared the expert's report with defense counsel on the same day that the report was authored, and that he had offered to get another opinion. The trial court declined to adjourn the trial and denied Petitioner's motion to suppress the evidence. Petitioner's trial commenced five days later on April 12, 2005.

The Michigan Court of Appeals reviewed Petitioner's claim on the merits and concluded that the trial court did not abuse its discretion by allowing late endorsement of the witness. The Court of Appeals further concluded that the admission of the expert witness's opinion did not affect Petitioner's substantial rights and that defense counsel's failure to seek an expert witness did not amount to ineffective assistance.

This court finds that Petitioner had sufficient notice of the expert witness's opinion. He did not request an adjournment in the trial date when defense counsel was presented with the witness's conclusions, and counsel was able to effectively cross-examine the witness's conclusions by pointing out dissimilarities in the handwriting samples. Although counsel may not have had sufficient time to obtain an expert witness to refute the conclusions of the prosecution's witness, he stated that he did not want a second independent evaluation of the evidence. (Tr. Apr. 7, 2005, at 4-5.) The court concludes that Petitioner was not prejudiced by the late endorsement of the witness and, therefore, he is not entitled to habeas corpus relief.

Nor was defense counsel ineffective for failing to seek an expert witness. A defense expert witness might have reached the same conclusion as the prosecution's expert witness, for it appears that even a layperson could have determined from the notes and letter that they were written by the same person. As the Court of Appeals recognized, the similarities in the notes went beyond the handwriting. Both of the

demand notes presented to tellers at the two banks began with the sentence, "I have a gun," and both notes demanded money. The note found at Petitioner's home was similar, and the jury was able to compare those notes to a letter that Petitioner admittedly wrote to the trial court.

There is not a reasonable probability that, but for counsel's failure to obtain an expert witness, the result of the proceeding would have been different. Consequently, defense counsel was not ineffective for failing to produce an expert witness. *Strickland v. Washington*, 466 U.S. 668, 694 (1984).

## D. Denial of Substitute Counsel

Petitioner contends that the trial court should have granted his motion for substitute counsel because his trial attorney represented him as if he intended to plead guilty and thereby operated under a conflict of interest. The Michigan Court of Appeals adjudicated this claim on the merits and concluded that the trial court did not abuse its discretion in denying Petitioner's motion for substitution of counsel. The court of appeals further concluded that reversal was not warranted on the basis of Petitioner's claim that defense counsel failed to subject the prosecution's case to meaningful adversary testing.

### 1. Clearly Established Law

A defendant in a criminal case has a right to the assistance of counsel in his defense. U.S. CONST. amend. VI; *Faretta v. California*, 422 U.S. 806, 807 (1975). However, "[t]he Sixth Amendment right to counsel 'does not guarantee that a criminal defendant will be represented by a particular attorney.'" *United States v. Green*, 388

F.3d 918, 921 (6th Cir. 2004) (quoting *Caplin & Drysdale v. United States*, 491 U.S.

617, 624 (1989)).

> When an accused seeks substitution of counsel in mid-trial, he must show good cause such as a conflict of interest, a complete breakdown in communication or an irreconcilable conflict with his attorney in order to warrant substitution.
>
> Consideration of such motions requires a balancing of the accused's right to counsel of his choice and the public's interest in the prompt and efficient administration of justice.

*Wilson v. Mintzes*, 761 F.2d 275, 280 (6th Cir. 1985) (citations omitted).

## 2. Application

At a pretrial hearing on March 29, 2005, Petitioner asked the trial court for a different attorney. He informed the trial court that defense counsel had not given him the discovery package. He stated that he wanted an evidentiary hearing and a line-up where everyone who was involved in the case could view him. He complained that his attorney had misled him about witnesses who were supposed to appear at the preliminary examination, and he expressed the opinion that his attorney was not representing him to the best of his ability. He also stated that he had informed counsel that he wanted to go to trial and was not interested in pleading guilty.

Defense counsel responded to Petitioner's comments by stating that there had been a line-up with the primary witnesses and that he had not tried to coerce Petitioner into pleading guilty, but that he did have an obligation to inform Petitioner of the prosecutor's plea offer. The trial court denied Petitioner's request for a different attorney. Defense counsel then requested a line-up with every civilian witness involved in the case, and the trial court granted the request. (Tr. Mar. 29,2005, at 6-18.)

On the second day of trial, Petitioner complained about his attorney's cross-examination of the officer who arranged to have the area round Petitioner's house secured after the second robbery. In the jury's absence, Petitioner informed the trial court that his attorney was not doing his job and that the attorney should have asked the officer about his report. The trial court provided Petitioner with an opportunity to write down all the questions that he wanted his attorney to ask the witness. The court then screened the questions for possible hearsay objections, and the attorney resumed his cross-examination of the officer by asking most of the questions that Petitioner had suggested. (Tr. Apr. 13, 2005, at 48-60.)

On the third and final day of trial, defense counsel explained to the trial court that Petitioner wanted to call certain witnesses. Counsel advised against calling the witnesses because, in his opinion, the witnesses would provide inculpatory or cumulative testimony instead of being helpful to the defense. Petitioner nevertheless informed the trial court that he wanted the jury to hear every detail of the robberies. The trial court agreed to permit one of the witnesses to testify, but, after defense counsel consulted with Petitioner, Petitioner decided not to call that witness. (Tr. Apr. 14, 2005, at 3-25.) Petitioner also declined to testify in his own behalf. (*Id.* at 46.)

Petitioner has failed to show a complete breakdown in communication between him and his attorney or an irreconcilable conflict between them. The record demonstrates that what tension there may have been between Petitioner and his attorney was in large part alleviated by the trial court permitting Petitioner to stage-manage his lawyer's activities in trial. Providing such latitude is not required, but is within a court's discretion. Here the tension between client and counsel was not "so

great that it resulted in a total lack of communication preventing an adequate defense."

*Bentez v. United States*, 521 F.3d 625, 632 (6th Cir. 2008) (quoting *United States v.*

*Iles*, 906 F.2d 1122, 1130 n.8 (6th Cir. 1990)).

Furthermore, defense counsel clearly subjected the prosecution's case to meaningful adversary testing. There is no evidence of latent hostility between Petitioner and counsel such that counsel breached his duty of loyalty to Petitioner or experienced a conflict between his own interests and Petitioner's interests. *Cf. Rickman v. Bell*, 131 F.3d 1150, 1157-59 (6th Cir. 1997). The trial court therefore did not abuse its discretion or deprive Petitioner of his right to counsel by denying the request for substitution of counsel.

### E.  Double Jeopardy

Petitioner alleges that he was punished multiple times for one offense in violation of his right not to be placed in double jeopardy. The Michigan Court of Appeals held that Petitioner's convictions did not violate double jeopardy because the Michigan Legislature intended to permit an offender to be convicted and sentenced for violating the armed robbery and bank robbery statutes.

The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. Among other things, the Clause protects against being punished twice for the same offense. *Witte v. United States*, 515 U.S. 389, 396 (1995).

"Whether punishments are 'multiple' under the double jeopardy clause is essentially a question of legislative intent." *Banner v. Davis*, 886 F.2d 777, 779-80 (6th

Cir. 1989) (citing *Ohio v. Johnson*, 467 U.S. 493, 498 (1983); *Missouri v. Hunter*, 459 U.S. 359, 366-68 (1983)). "When assessing the intent of a state legislature, a federal court is bound by a state court's construction of that state's own statutes" and "by a state court's determination of the legislature's intent." *Id.* at 780. "Thus, for purposes of double jeopardy analysis, once a state court has determined that the state legislature intended cumulative punishments, a federal habeas court must defer to that determination." *Id.* The Supreme Court "has never held or intimated that the constitutional bar against double jeopardy circumscribes the legislative prerogative to define crimes and prescribe punishment in the context of a single prosecution." *White v. Howes*, 586 F.3d 1025, 1032 (6th Cir. 2009).

In Michigan, "the bank robbery statute and the armed robbery statute, though involving comparable subject matter, were promulgated to protect different interests. The former statute is intended to protect those structures intentionally constructed to protect valuables, while the latter is intended to protect persons from assaultive takings by means of a dangerous weapon." *People v. Shipe*, 476 N.W.2d 490, 492 (Mich. Ct. App. 1991). "[B]ecause the armed robbery statute and the bank, safe, or vault robbery statute are intended to protect different social norms, *Shipe*, supra at 632, 476 N.W.2d 490, the statutes 'can generally be viewed as separate and amenable to permitting multiple punishments.'" *People v. Ford*, 687 N.W.2d 119, 127 (Mich. Ct. App. 2004) (quoting *People v. Rodibeau*, 355 N.W.2d 592, 604 (Mich. 1985)). There is

> "further support for this conclusion in the legislative sentence guidelines. Both armed robbery and bank robbery are punishable by up to life in prison. Both are categorized as offenses against persons under the guidelines. MCL 777.16y. But armed robbery is a class A offense while bank robbery, by whatever means committed, is a class C offense. *Id.* Thus, a conviction for armed robbery will invariably result in a greater

recommended sentence under the guidelines then a conviction for bank robbery, even though both are life offenses. See MCL 777.62 (class A grid) and MCL 777. 64 (class C grid). This disparate sentencing treatment supports the conclusion that the Legislature's primary focus in the bank robbery statute was the type of property targeted by the offender rather than that the offense be committed by assaulting a person.

*Id.*

The two statutes in question also pass muster under the "same elements" test of

*Blockburger v. United States*, 284 U.S. 299, 304, (1932), in which the Supreme Court

held that "where the same act or transaction constitutes a violation of two distinct

statutory provisions, the test to be applied to determine whether there are two offenses

or only one, is whether each provision requires proof of a fact which the other does not."

> The elements necessary to prove armed robbery are: "'(1) an assault, (2) a felonious taking of property from the victim's presence or person, (3) while the defendant is armed with a weapon described in the statute.'" *People v. Carines*, 460 Mich. 750, 757, 597 N.W.2d 130 (1999), quoting *People v. Turner*, 213 Mich. App. 558, 569, 540 N.W.2d 728 (1995). Thus, armed robbery lacks an element necessary to violate the bank, safe, or vault robbery statute: the intent to steal property from "any building, bank, safe, vault or other depository of money, bonds, or other valuables." MCL 750.531; *People v. Monick*, 283 Mich. 195, 197, 277 N.W. 883 (1938). Similarly, the offense of armed robbery contains elements never required to prove bank, safe, or vault robbery: the use of "a dangerous weapon, or any article used or fashioned in a manner to lead the person so assaulted to reasonably believe it to be a dangerous weapon" and the taking of property from or in the presence of a person. MCL 750.529; *People v. Randolph*, 466 Mich. 532, 536, 648 N.W.2d 164 (2002); *Witt*, supra at 370-371, 364 N.W.2d 692.

*Ford*, 687 N.W.2d at 128.

The Michigan "Legislature intended to permit separate punishment for both

armed robbery and bank, safe, or vault robbery," *id.*, and each offense contains an

element not found in the other offense. Petitioner's double jeopardy rights were not

violated by his convictions for both armed robbery and bank robbery.

## F.  Sufficiency of the Evidence

Petitioner alleges next that there was no factual basis for the individual charges against him and, therefore, his convictions were not supported by sufficient evidence. Petitioner has not explained this allegation in detail, but in his state appellate brief, he asserted that the evidence adduced at trial was insufficient to support his armed robbery conviction.  He claims that there was no evidence of an assault or threat and that no one testified to seeing a gun.  The Michigan Court of Appeals held that the demand notes, which stated, "I have a gun," were sufficient to enable a rational trier of fact to find that the prosecutor proved the armed element of armed robbery beyond a reasonable doubt.

> The question on habeas review of a sufficiency-of-the-evidence claim is
>
> whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (internal citation omitted) (emphasis in original).  Courts must apply the *Jackson* standard "with explicit reference to the substantive elements of the criminal offense as defined by state law."  *Id.* at 324 n.16. In Michigan, "[t]he elements of armed robbery are:  (1) an assault, (2) a felonious taking of property from the victim's person or presence, and (3) the defendant must be armed with a weapon described in the statute."  *People v. Johnson*, 520 N.W.2d 672, 673 (Mich. Ct. App. 1994).  Effective July 2004, the "armed" element is satisfied if the defendant  "represents orally or otherwise that he or she is in possession of a dangerous weapon."  Mich. Comp. Laws § 750.529; *People v. Chambers*, 742 N.W.2d

610, 614-15 (Mich. Ct. App. 2007); *People v. Spratt*, No. 277814, 2008 WL 902210, *1, n.1 (Mich. Ct. App. April 3, 2008). During the robbery committed on December 7, 2004, the suspect handed teller Brad Grekonich a note that said, "I have a gun. Give me the money or I'll kill you." Mr. Grekonich testified that the note frightened him. He believed that the robber was armed with a weapon and could have harmed him with a gun. As a result, he handed the robber some money. (Tr. Apr. 12, 2005, at 188-90, 193.) During the robbery on the following day, a robber handed teller Shareen Coles a note that said, "I have a gun; give me all the money now." She was afraid because she believed that Petitioner was armed with a gun. (*Id.* at 242-45.) Thus, there was sufficient evidence to support the armed robbery convictions, and the state appellate court's conclusion did not result in a decision that was contrary to, or an unreasonable application of, *Jackson*.

## G. Prosecutorial Misconduct

Petitioner contends that the prosecutor committed misconduct by vouching for evidence, expressing his personal belief in the credibility of witnesses, and making a factual statement that was not supported by the evidence. Petitioner has not cited to the record, nor provided a factual basis for this claim. In his state court brief, however, he argued that the prosecutor vouched for his witnesses and commented on facts known only to him by stating that –

> obviously, the same man robbed both banks and everything pointed to the same robber (Tr. Apr. 14, 2005, at 49);

> the demand notes speak for themselves and appear to be written by the same person (*id.* at 50); and

> bank teller Shareen Coles would not have identified Petitioner as the robber unless she was sure of it (*id.* at 78).

> The prosecutor also rhetorically asked the jury whether an innocent person would

stay inside his house when the house is surrounded by police officers and the officers have asked the person to come outside. (*Id.* at 74-75.) The Michigan Court of Appeals determined that the prosecutor's conduct was proper.

### 1. Clearly Established Law

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). To prevail on a prosecutorial-misconduct claim, a habeas petitioner must demonstrate that the prosecutor's conduct deprived him of a specific constitutional right or infected his trial with such unfairness as to make the resulting conviction a denial of due process. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). The misconduct must have been "so egregious as to render the entire trial fundamentally unfair." *Cook v. Bordenkircher*, 602 F.2d 117, 119 (6th Cir. 1979).

Courts in this Circuit employ a two-prong test for determining whether prosecutorial misconduct rendered a trial fundamentally unfair. *Slagle v. Bagley,* 457 F.3d 501, 515 (6th Cir. 2006). First, courts must ask whether the prosecutor's conduct or remarks were improper. *Id.* at 516. Second, if the conduct or remarks were improper, a reviewing court must consider whether the improper acts were so flagrant as to warrant reversal. *Id.* Four factors are used "to decide whether the improper acts were sufficiently flagrant to warrant reversal: (1) whether the evidence against the defendant was strong[;] (2) whether the conduct of the prosecution tended to mislead the jury or prejudice the defendant; (3) whether the conduct or remarks were isolated or extensive; and (4) whether the remarks were made deliberately or accidentally." *Id.*

## 2. Application

Prosecutors may not misrepresent the facts in evidence or assert facts never admitted in evidence. *Washington v. Hofbauer*, 228 F.3d 689, 700 (6th Cir. 2000). Nor may they vouch for witnesses, comment on the credibility or weight of evidence, express their personal opinions, or suggest that they have personal knowledge of facts not before the jury. *See Irick v. Bell*, 565 F.3d 315, 326 (6th Cir. 2009), *cert. denied*, __ S. Ct. __, 2010 WL 56620 (U.S. Feb. 22, 2010) (No. 09-7257). They may, however, "argue the record, highlight the inconsistencies or inadequacies of the defense, and forcefully assert reasonable inferences from the evidence." *Bates v. Bell*, 402 F.3d 635, 646 (6th Cir. 2005).

The prosecutor's comment about the robber's demand notes and his remark that the same man obviously robbed both banks were based on the evidence. Surveillance photographs and eyewitness descriptions of the robber established that the robber at both banks was the same person. In addition, the demand notes were similar in style, and the prosecution's expert witness testified that the same person wrote (1) the demand notes given to tellers at the two banks, (2) the demand note found in a coat where Petitioner lived, and (3) a letter that Petitioner wrote to the trial court.

The comment about bank teller Shareen Coles was a reasonable inference from the evidence. Coles watched the robber fill out a deposit slip and approach the teller next to her. After she offered to help the robber, she confronted him face-to-face and had eye contact with him. She was not distracted, and she promptly identified him at the pretrial line-up. It was reasonable to infer and, therefore, to argue that Coles would not have identified Petitioner unless she was sure about her identification.

The suggestion that an innocent person would not have hid from the police was a proper argument because, in Michigan,

> evidence of flight is admissible to support an inference of "consciousness of guilt" and the term "flight" includes such actions as fleeing the scene of the crime. *People v. Coleman*, 210 Mich.App. 1, 4, 532 N.W.2d 885 (1995). Also, [the Michigan Court of Appeals] has held that evidence of flight does not infringe a defendant's privilege against self-incrimination and the prosecutor is entitled to comment on the evidence of flight and the inferences that can be drawn therefrom. *People v. Dixon*, 84 Mich. App. 675, 682, 270 N.W.2d 488 (1978).

*People v. Goodin*, 668 N.W.2d 392, 396 (Mich. Ct. App. 2003). Although the Supreme Court and the Sixth Circuit Court of Appeals are skeptical about the probative value of such evidence, *Parker v. Renico,* 506 F.3d 444, 450-51 (6th Cir. 2007), the trial court instructed the jurors that evidence of flight does not necessarily prove guilt. The trial court also stated that a person may run or hide for innocent reasons, and that it was up to the jurors to decide from the evidence whether Petitioner had a guilty state of mind. (Tr. Apr. 14, 2005, at 95.) The court concludes that the prosecutor's remarks were not improper and, even if they were, the comments were not so flagrant as to require a new trial.

### 3. Counsel's Failure to Object

Petitioner alleges that his trial attorney was ineffective for failing to object to the prosecutor's comments. However, because the prosecutor's comments were proper, defense counsel was not ineffective for failing to object to the comments. "[T]rial counsel cannot have been ineffective for failing to raise a meritless objection." *Juan H. v. Allen,* 408 F.3d 1262, 1273 (9th Cir. 2005).

## H.  The Jury Instruction on Flight

Petitioner contends that the trial court erroneously instructed the jury on flight. According to Petitioner, there was no evidence supporting the instruction.  The Michigan Court of Appeals ruled that the instruction was supported by the evidence and that the trial court protected Petitioner's rights by instructing the jury that a person may run or hide for innocent reasons.

The question on habeas review of jury instructions is not whether the instructions were "undesirable, erroneous, or even 'universally condemned.'"  *Cupp v. Naughten*, 414 U.S. 141, 146 (1973).  Instead, before a federal court may overturn a state conviction, the instructions must have violated "some right which was guaranteed to the defendant by the Fourteenth Amendment" or the ailing instructions themselves must have "so infected the entire trial that the resulting conviction violates due process."  *Id.* at 146-47.

The disputed instruction in this case reads:

> There's been some evidence that the Defendant ran away or drove away after the alleged crime and hid when the police tried to arrest him. This evidence does not prove guilt.  A person may run or hide for innocent reasons such as panick [sic], mistake or fear.  However, a person may also run or hide because of a consciousness of guilt.  You must decide whether the evidence is true and if true whether it shows whether the Defendant had a guilty state of mind.

(Tr. Apr. 14, 2005, at 95.)

Prosecution witness Elizabeth Cutraro testified that, on December 8, 2004, she saw a man run out of the Fidelity Bank on Maple Road in Birmingham.  After speaking with a bank manager, she followed the man to a house on Webster Street.  She then notified the police where Petitioner had gone.  Several police officers subsequently

surrounded the house and tried to get Petitioner to come out of the house. One officer

estimated that he waited four and a half to five hours for Petitioner to surrender. (Tr.

Apr. 13, 2005, at 41, 45.) Given this evidence, the trial court did not err by instructing

the jury on flight. The instruction did not "infuse[] the trial with unfairness as to deny

[Petitioner] due process of law." *See Estelle v. McGuire*, 502 U.S. 62, 75 (1991)

(quoting *Lisenba v. California*, 314 U.S. 219, 228 (1941)).

### I. The Sentence

The seventh and final habeas claim alleges that the Michigan sentencing

guidelines were scored erroneously and that Petitioner should have been given credit

for the time he spent in jail. This claim is not cognizable on habeas review, because

> [a] state court's alleged misinterpretation of state sentencing guidelines
> and crediting statutes is a matter of state concern only. *Travis v. Lockhart*,
> 925 F.2d 1095, 1097 (8th Cir. 1991); *Branan v. Booth*, 861 F.2d 1507,
> 1508 (11th Cir. 1988). "[F]ederal habeas corpus relief does not lie for
> errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67, 112 S.Ct. 475,
> 116 L.Ed.2d 385 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780, 110
> S.Ct. 3092, 111 L.Ed.2d 606 (1990)).

*Howard v. White*, 76 F. App'x. 52, 53 (6th Cir. 2003). Petitioner has no right to relief on

the basis of his sentencing claim.

### IV. CERTIFICATE OF APPEALABILITY

A petitioner must receive a certificate of appealability ("COA") in order to appeal

the denial of a habeas petition for relief from either a state or federal conviction.[2] 28

U.S.C. §§ 2253(c)(1)(A), (B). A court may issue a COA "only if the applicant has made

---

[2] Effective December 1, 2009, the newly created Rule 11 of the Rules Governing
Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides
that "[t]he district court must issue or deny a certificate of appealability when it enters a
final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254.

a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

When a federal district court rejects a habeas claim on the merits, the substantial

showing threshold is met if the petitioner demonstrates that reasonable jurists would

find the district court's assessment of the constitutional claim debatable or wrong.  *See*

*Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  "A petitioner satisfies this standard by

demonstrating that . . .  jurists could conclude the issues presented are adequate to

deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327

(2003).  In applying this standard, a district court may not conduct a full merits review,

but must limit its examination to a threshold inquiry into the underlying merit of the

petitioner's claims.  *Id.* at 336-37.  The court concludes that jurists of reason would not

find the court's assessment of the constitutional claims debatable or wrong.  The court

thus declines to issue Petitioner a certificate of appealability.

## V.  THE REQUEST FOR A STAY

Petitioner asked for permission to stay these proceedings so that he can exhaust

state remedies for a new claim alleging that the trial court lacked jurisdiction to try him.

In support of this claim, Petitioner alleges that there was no arraignment, no bond to

appear, no complaint, no registry of action, no preliminary examination, and no proper

return by the magistrate.  According to Petitioner, his conviction was a "jurisdictional

nullity."

District courts possess authority to issue stays.  *Rhines v. Weber*, 544 U.S. 269,

276 (2005).  However, a "stay and abeyance" approach in which a district court stays a

habeas petition while the petitioner exhausts state remedies for unexhausted claims, is

permissible only when (1) there is "good cause" for the petitioner's failure to exhaust his

claims first in state court, (2) the unexhausted claims are not "plainly meritless," and (3) the petitioner is not "engage[d] in abusive litigation tactics or intentional delay." *Id.* at 277-78. Petitioner is, perhaps, not engaged in "abusive litigation tactics," but he has decidedly not established "good cause" for the failure to raise his new claim on direct review. Although he asserts that his jurisdictional claim is recently discovered, the factual basis for the claim could have been discovered before trial. Furthermore, the claim is plainly meritless. Petitioner was arraigned and charged in a criminal information. He was also afforded a preliminary examination, with a finding of probable cause by the magistrate, and then tried in a Michigan circuit court, which had jurisdiction over him and authority to adjudicate the felonies with which he was charged.

Even if there were irregularities in the state procedures, the "[d]etermination of whether a state court [wa]s vested with jurisdiction under state law is a function of the state courts, not the federal judiciary." *Wills v. Egeler*, 532 F.2d 1058, 1059 (6th Cir. 1976). Petitioner's jurisdictional claim is plainly meritless, and it would be inappropriate to stay this case while Petitioner attempts to exhaust state court remedies for this claim.

## VI. CONCLUSION

The state appellate court's rejection of Petitioner's claims did not result in a decision that was contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts. Accordingly,

IT IS ORDERED that the petition for writ of habeas corpus [Dkt. #1] is DENIED.

IT IS FURTHER ORDERED that the court declines to issue a certificate of appealability.

24

IT IS FURTHER ORDERED that Petitioner's request for a stay [Dkt. # 13] is

DENIED.

s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: March 30, 2010

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, March 30, 2010, by electronic and/or ordinary mail.

s/Deborah J. Goltz
Case Manager